UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES ALLAN WILLITTS, SR., <br><br> Plaintiff, <br><br> v. <br><br> LIFE INSURANCE COMPANY OF NORTH AMERICA, GDF SUEZ ENERGY NORTH AMERICA INC./ENGIE NORTH AMERICA, INC. <br> Defendants. | Civil Action No. 1:18-cv-11908-ADB |

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

BURROUGHS, D.J.

Plaintiff James Willitts ("Willitts") filed this action against his former employer GDF Suez Energy North America Inc./Engie North America Inc. ("Engie") and the employee disability insurance company, Life Insurance Company of North America Inc. ("LINA" and, with Engie, the "Defendants"). [ECF No. 37]. Willitts claims that the Defendants failed to honor terms of his insurance benefits policy contract and that he was wrongfully terminated for exercising his right to enforce that policy. [Id. at 1].

Currently pending before the Court are Defendants' motions for partial summary judgment.[1] [ECF Nos. 47, 49]. For the reasons set forth below, the motions, [ECF Nos. 47, 49], are GRANTED.

---

[1] Though the Defendants originally filed motions for summary judgment, the Court took the motions under advisement as motions for partial summary judgment after a status conference on February 27, 2020, in which it consolidated 18-cv-11908 and 18-cv-11906. [ECF Nos. 60, 62].

## I. BACKGROUND

### A. Procedural Background

This case arises from three separate complaints filed by Willitts in the fall of 2018. The Court consolidated two of those cases, 18-cv-11906 and 18-cv-12252, in 18-cv-11906. See Willitts v. Engie, No. 18-cv-11906, [ECF Nos. 25, 26] (D. Mass. May 13, 2019). In that consolidated case, Willitts claimed that his employer, Engie, retaliated against him for taking medical leave by terminating his employment and telling other power generation companies not to hire him. See Willitts v. Engie, No. 18-cv-11906, [ECF No. 1] (D. Mass. Sept. 7, 2018); Willitts v. Engie, No. 18-cv-12252, [ECF No. 1] (D. Mass. Oct. 26, 2018). In the third case, 18-cv-11908, Willitts brought an ERISA claim, alleging that the Defendants denied his request to extend his short-term disability benefits beyond September 29, 2016, without conducting a full investigation into the merits of his claims. [ECF No. 1].

The Court appointed counsel in both 18-cv-11906 and 18-cv-11908. See Willitts v. Engie, No. 18-cv-11906, [ECF No. 24] (D. Mass. May 13, 2019); Willitts v. Life Ins. Co. of N.A., et al., No. 18-cv-11908, [ECF No. 33] (D. Mass. May 13, 2019). The Court then amended the scheduling order in 18-cv-11906, the non-ERISA case, so that counsel could file an amended complaint, Willitts v. Engie, No. 18-cv-11906, [ECF No. 25] (D. Mass. May 13, 2019), but did not amend the schedule in 18-cv-11908, the ERISA case.

On September 12, 2019, Willitts filed an amended complaint in 18-cv-11908, instead of 18-cv-11906 as the Court had directed. See Willitts v. CIGNA, et al., No. 18-cv-11908, [ECF Nos. 37, 38, 39] (D. Mass. Sept. 12, 2019). The Court granted Defendants' motion to strike the amended complaint in 18-cv-11908 and ordered Willitts to seek leave from the Court to file an

amended complaint in 18-cv-11906, as the amended complaint filed in 18-cv-11908 would have been untimely under operative scheduling order in 18-cv-11906. [ECF No. 45]. On November 5, 2019, Willitts filed a motion asking that the Court reconsider its order and consolidate the non-ERISA case (18-cv-11906), with the ERISA case (18-cv-11908). [ECF No. 46]. The Defendants opposed. [ECF No. 53]. On November 15, 2019, before the Court ruled on that motion, the Defendants filed the instant motions for summary judgment, [ECF Nos. 47, 49], in accordance with the Court's scheduling order, [ECF No. 34]. Willitts opposed, [ECF Nos. 54, 55, 56, 57] and the Defendants filed a joint reply, [ECF No. 58].

On February 27, 2020, the Court held a status conference, [ECF No. 60], and granted the motion for reconsideration in part by consolidating the cases, [ECF No. 62]. With the agreement of the parties, the Court determined that Plaintiff's amended complaint, [ECF Nos. 37, 38, 39], would act as the operative complaint in the consolidated case. This operative complaint brings claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), ERISA under 29 U.S.C. § 1132 (Count III), breach of fiduciary duty as against LINA (Count IV), fraud and fraudulent inducement (Count V), intentional infliction of emotional distress (Count VI), unjust enrichment (Count VII), violation of the Massachusetts Consumer Protection Act (Count VIII), and wrongful termination/retaliation against Engie (Count IX). Also during this status conference, the Court and parties agreed that the Court would consider the pending motions for summary judgment as partial motions for summary judgment on Willitts' ERISA claim and potentially preempted state-law claims.

### B.     Factual Background

The following facts are based on the administrative record or are not in dispute for the purposes of summary judgment relative to the ERISA claim and related state-law claims.

3

Willitts began working at Engie in April 2014.  [ECF No. 55 at 2; ECF No. 58 at 2].  Engie sponsors a short-term disability plan, which is administered by LINA pursuant to a Claims Consulting Agreement.  [ECF No. 36 at 388–400].  The short-term disability plan defines an employee as disabled if "because of a covered Injury or Sickness, [the employee is]: 1. Unable to perform all of the material duties of [his] Regular Occupation; and 2. Unable to earn 80% or more of [his] Indexed Earnings from working in [his] Regular Occupation."  [ECF No. 37 ¶ 11; ECF No. 36 at 374].  The plan defines "Regular Occupation" as "[t]he occupation [the claimant] routinely perform[ed] at the time the Disability beg[an].  In evaluating Disability, the Plan will consider the duties of the occupation as it is normally performed in the general labor market in the national economy.  It is not work tasks that are performed for a specific employer or at a specific location."  [ECF No. 36 at 384].

On September 12, 2016, Willitts' counselor, who had been treating Willitts for depression and anxiety since 2010, requested that his primary care physician help him complete FMLA paperwork.  [Id. at 79].  On that same day, Willitts applied for short-term disability benefits based on his anxiety.  [Id. at 3].  Willitts never submitted a claim for long-term disability benefits.  See generally [ECF No. 37].[2]

---

[2] Although the complaint references Willitts' being terminated "within 90 days after [his] filing for [short-term disability] and [long-term disability] claims," [ECF No. 37 ¶ 22], and the Defendants' alleged "fail[ure] to further investigate Willets' [sic] case to ascertain his [short-term disability] and [long-term disability] claims," [id. ¶ 25], there is no allegation or evidence that he filed a claim for long-term disability.  Therefore, any potential claim for long-term benefits, whether or not specifically alleged in the complaint, would be barred because of Willitts' failure to submit a long-term disability benefits claim to his employer.  See Medina v. Met. Life Ins. Co., 588 F.3d 41, 47–48 (1st Cir. 2009) (affirming a district court's dismissal of a claim for long-term disability benefits due to the plaintiff's failure to exhaust administrative remedies when the plaintiff "d[id] not attempt to rebut the district court's conclusion with any direct evidence that he did in fact submit a long-term disability benefits claim").

Willitts' primary care physician prescribed him medications to help with his anxiety symptoms on September 13, 2016.  [ECF No. 36 at 75].  About a week later, Willitts reported that he was "feeling better" and that his "mood ha[d] improved tremendously."  [Id. at 74].  Again, on October 24, 2016, his primary care physician noted that Willitts was "doing well from the . . . medications."  [Id. at 70].

On October 28, 2016, LINA approved benefits through September 29, 2016, but determined that Willitts was not entitled to benefits beyond that date.  [Id. at 81].  LINA continued to monitor Willitts' claim and requested additional medical records by November 11, 2016.  [Id.].

In response to LINA's request for additional records, Willitts' primary care physician noted that Willitts had not visited him since the October 24, 2016 visit, when he was reporting improvement.  [Id. at 97, 111].  On November 23, 2016, Willitts' new counselor wrote to his primary care physician and reported  that Willitts' "symptoms of anxiety and depression [had] diminished, but it [wa]s apparent that when he consider[ed] he [wa]s to return to work these symptoms [were] exacerbate[d]."  [Id. at 117].  His counselor recommended that he "continue his medical leave from work until after January 1st, allowing him to adjust to returning to [a] hostile work environment by a reasonable person's standards."  [Id.].  Additionally, Willitts' attorney submitted a questionnaire completed by his counselor in which the counselor explained that Willitts was unable to return to work "as a result of workplace hostility . . . ."  [Id. at 125].

On February 21, 2017, LINA informed Willitts that it had reviewed the information he provided and had determined that he was not eligible for benefits beyond September 29, 2016.  [Id. at 126–28].  LINA explained that it had "not received office visit notes, no specific dates of

5

treatment, no description or defined level of severity, frequency of symptoms or impairments or any information to support an inability to perform [his] occupation." [Id.].

In May 2017, Willitts submitted additional information to LINA including a behavioral health questionnaire and a medical request form. [Id. at 156–60]. He also submitted treatment notes from his counselor for September 2016 until April 2017. [Id. at 136–51]. LINA reviewed these records and, on June 26, 2017, informed Willitts that its determination had not changed. [Id. at 174–75].

Willitts appealed the decision on July 27, 2017. [Id. at 177]. On August 29, 2017, LINA sent a letter to Willitts to confirm that, as represented by Willitts' attorney, all additional records for consideration on appeal had been submitted. [Id. at 197–98]. LINA referred the appeal to a Behavioral Medicine Specialist (the "Specialist") and provided all the medical records it had received, including the additional information Willitts had provided in May. [Id. at 199–201]. The Specialist determined that Willitts was not disabled under the meaning of the short-term disability benefits plan. [Id.]. He explained that "[t]he treating provider's opinion is not well supported by medically acceptable clinical diagnostic techniques including mental status examinations, psychological and/or neuropsychological testing and is inconsistent with the other substantial evidence in the claim file," [id. at 199], and concluded that "there is no documentation of work tasks or activities that [Willitts] is actually unable to perform, or documentation of performance deficits at work," [id. at 200]. The Specialist noted that Willitts had expressed an interest in interviewing with different companies and found that "[t]he fact that he [wa]s seeking alternative employment [wa]s *prima facie* evidence that impairments and limitations do not preclude him from working." [Id.].

6

On September 20, 2017, LINA informed Willitts that its original coverage decision had been upheld. [Id. at 209–13]. Willitts then filed the three complaints now consolidated in this case. [ECF No. 1].

## II.     LEGAL STANDARD

Willitts has asserted state law claims under a breach of contract theory and complains about a denial of disability claims under ERISA. As more fully set forth below, the state-law contract claims are preempted by ERISA. See Section III.A, infra.

With regard to the ERISA claim set forth in Count III, a denial of benefits under 29 U.S.C. § 1132(a)(1)(B) should be renewed *de novo*, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), unless the ERISA plan at issue provides otherwise. "When the plan administrator has been granted such discretion, its decision must be upheld unless it is arbitrary, capricious, or an abuse of discretion." Lauziere v. Aetna Life Ins. Co., No. 13-cv-10989, 2014 WL 12599818, at *8 (D. Mass. Oct. 21, 2014) (citing Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs. Long Term Disability Plan, 705 F.3d 58, 61 (1st Cir. 2013)); see also Cusson v. Liberty Life Assurance Co., 592 F.3d 215, 224 (1st Cir. 2010) (noting that if "the ERISA plan gives the administrator the discretion to determine eligibility for benefits[,] . . . a reviewing court must uphold that decision unless it is 'arbitrary, capricious, or an abuse of discretion'" (quoting Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004)), abrogated on other grounds by Montanile v. Bd. of Trs. of Nat. Elevator Indus. Health Benefit Plan, 136 S.Ct. 651 (2016)).

"Summary judgment in the ERISA context differs significantly from summary judgment in an ordinary civil case." Petrone v. Long Term Disability Income Plan for Choices Eligible Emps. of Johnson & Johnson & Affiliated Cos., 935 F. Supp. 2d 278, 287 (D. Mass. 2013). In

7

an ERISA case, the Court acts "more as an appellate tribunal than as a trial court." Id. Rather than taking evidence, the Court evaluates the reasonableness of the plan administrator's decision "in light of the record compiled before the plan fiduciary." Id.; see also Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005) ("[I]n an ERISA case where review is based only on the administrative record before the plan administrator and is an ultimate conclusion as to disability to be drawn from the facts, summary judgment is simply a vehicle for deciding the issue . . . . This means the non-moving party is not entitled to the usual inferences in its favor." (internal citations omitted)).

"The threshold question, then, is whether the provisions of the employee benefit plan under which remediation is sought reflect a clear grant of discretionary authority to determine eligibility for benefits." Leahy v. Raytheon Co., 315 F.3d 11, 15 (1st Cir. 2002). Willitts does not address what standard of review should be used in considering the request for benefits. See generally [ECF No. 55].

In this case, the short-term disability plan explicitly granted discretionary authority to LINA to determine whether a claimant was eligible for short-term disability benefits:

> The Plan Administrator is the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. The Plan Administrator shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Plan Administrator shall be final and binding on Participants and Beneficiaries to the full extent permitted by law.

[ECF No. 36 at 386]. The role of the Court will therefore be limited to determining whether the denial of Willitts' request for short-term disability was arbitrary and capricious. See, e.g., Leahy, 315 F.3d at 15 (determining that the arbitrary and capricious standard applied when the plan documents gave the administrator "the exclusive right, in [its] sole discretion, to interpret the

8

[p]lan and decide all matters arising thereunder" and provided that the administrator's determinations would "be conclusive and binding on all persons unless it c[ould] be shown that the . . . determination was arbitrary and capricious").

### III.   DISCUSSION

#### A.   Willitts' State-Law Claims (Counts I, II, IV, V, VI, and VII) Are Preempted by ERISA

It is uncontested that the benefits plans at issue are both ERISA plans. See [ECF No. 48 at 4; ECF No. 51 at 17]; see generally [ECF No. 55]. As a preliminary matter, Defendants argue that many of Willitts' state-law claims are preempted by ERISA. [ECF No. 48 at 4; ECF No. 51 at 17 n.5]. Willitts does not address the issue. See generally [ECF No. 55].

Section 514(a) of ERISA provides that the statute "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). "The Supreme Court has identified two instances where a state cause of action relates to an employee benefit plan: where the cause of action requires 'the court's inquiry [to] be directed to the plan,' or where it conflicts directly with ERISA." Carrasquillo v. Pharmacia Corp., 466 F.3d 13, 20 (1st Cir. 2006) (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140–42 (1990)). See, e.g., Farias v. Mass. Laborers' Health and Welfare Fund, No. 17-cv-11097, 2018 WL 340031, at *6 (D. Mass. Jan. 9, 2018) (finding that a plaintiff's negligence claim was preempted by ERISA where "the conduct at issue 'relate[d] to' the ERISA plan because the plan provide[d] prescription drug coverage and plaintiff grounds the negligence claim on the alleged delay in prescription coverage" (internal citations omitted)). "[A] state law cause of action is expressly preempted by ERISA where a plaintiff, in order to prevail, must prove the existence of, or specific terms of, an ERISA plan." McMahon v. Digital Equip. Corp., 162 F.3d 28, 38 (1st Cir. 1998). Therefore, "ERISA will be found to preempt state-law claims if

the trier of fact necessarily would be required to consult the ERISA plan to resolve the plaintiff's claims." Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 281 (1st Cir. 2000).

In Count I, Willitts alleges that the Defendants breached their contractual duties under the ERISA benefits plan by failing to investigate his request to extend his short-term disability. [ECF No. 37 ¶¶ 23–27]. "It would be difficult to think of a state law that 'relates' more closely to an employee benefit plan than one that affords remedies for the breach of obligations under that plan." Turner v. Fallon Cmty. Health Plan, Inc., 127 F.3d 196, 199 (1st Cir. 1997). Because the complaint alleges that the Defendants breached their contractual duties under the ERISA plan, the breach of contract claim is plainly preempted by ERISA. See, e.g., Farias, 2018 WL 340031, at *7 ("The contract purportedly breached is the plan. . . . [T]he contract claim 'do[es] not merely reference the ERISA plan, [it] require[s] its construction because the contract allegedly breached is the ERISA plan itself.' The contract claim is therefore preempted." (quoting Bui v. Am. Telephone & Telegraph Co. Inc., 310 F.3d 1143, 1152 (9th Cir. 2002) (internal citations omitted)); see also Summersgill v. E.I. Dupont de Nemours & Co., No. 13-cv-10279, 2014 WL 1032732, at *2 (D. Mass. Mar. 18, 2014) (finding that a breach of contract claim was preempted by ERISA where "the trier of fact would be required to refer to the [benefits plan] to determine whether the [d]efendants breached it"). Summary judgment is therefore granted as to Count I.

In Count II, Willitts alleges that the Defendants violated their duty of good faith and fair dealing by "fail[ing] to follow through on contractual obligations under the policy . . . ." [ECF No. 37 ¶ 31]. Consequently, "[t]he Defendants has [sic] breached its [sic] duty of good faith and fair dealing implied [in] every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of their contract."

10

[Id. ¶ 34]. Because the claim in Count II is based on a violation of the Defendants' obligations under the ERISA plan, it too is preempted. See, e.g., Curran v. Camden Nat. Corp., 477 F. Supp. 2d 247, 261 (D. Me. 2007) (finding that a plaintiff's breach of implied covenant of good faith and fair dealing claim was preempted by ERISA because in order "[t]o rule, the Court [would have to] consider the reimbursement provision of the . . . ERISA plan document").

In Count IV, Willitts alleges that CIGNA and LINA breached their fiduciary duties by failing to investigate Willitts' disability claim as required under the benefits plan. [ECF No. 37 ¶¶ 40–46]. "[I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA . . . ." Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004) (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987)). Here, Willitts alleges only that he is entitled to coverage under the terms of the benefits plan. See [ECF No. 37 ¶ 42 ("CIGNA specifically stated in the binding ENGIE Employee Benefits contract that 'Once your claim is approved, you will continue to receive STD benefits through your approval period. While out on [S]TD, your regular benefit premiums will continue to be taken out of your paycheck."); ¶ 44 ("CIGNA and LINA as the administrator or fiduciary [have] discretionary authority to determine eligibility for benefits under the policy contract of the plan."); ¶ 46 ("As a result of their failure to exercise reasonable diligence in carrying out their duties, they have breached their fiduciary duties to the beneficiary Plaintiff for exercising his ERISA rights.")]. Because the Defendants only owed fiduciary duties pursuant to their contractual obligations under the ERISA plan and Willitts does not allege that they had fiduciary duties independent of the ERISA plan, the breach of fiduciary duty claim is preempted

by ERISA. See, e.g., Summersgill, 2014 WL 1032732, at *4 ("[T]he only basis provided for [p]laintiff's breach of fiduciary duty claim is that [plaintiff] was denied benefits owed to her under the Plan; [p]laintiff does not identify any other independent obligation owed by either [d]efendant.").

In Count V, Willitts alleges fraud and fraudulent inducement against Defendant for "inducing Willets [sic] from the enforcement of his material rights under the policy and under the law." [ECF No. 37 ¶ 51]. This Count too is preempted by ERISA because the claim is premised on the allegation that the Defendants failed to keep Willitts' claim open and to investigate his alleged disability as required by the ERISA benefits plan. See, e.g., Carrasquillo, 466 F.3d at 20 (holding that the plaintiff's state-law claims for fraudulent inducement and intentional infliction of emotional distress were preempted by ERISA because an evaluation of the claims required an analysis of the benefits plan).

In Count VI, Willitts alleges that the Defendants "made numerous false statements" and asked him "to submit additional documentation[]," when they had already "close[d] his case and failed to even conduct [an] investigation to determine his claims eligibility." [ECF No. 37 ¶ 54]. By misleading Willitts into believing that his case was still being considered, the Defendants allegedly "caused severe emotional distress coupled with long[-]term physical conditions," amounting to an intentional infliction of emotional distress. [Id.]. The First Circuit has held that a claim of intentional infliction of emotional distress is preempted by ERISA when "the factual basis supporting [the] emotional distress claim is simply a reiteration of the facts supporting [the] fraudulent inducement claims." Carrasquillo, 466 F.3d at 20. In this case, Willitts' emotional distress claim relies on the allegedly tortious effect of having to continue to submit medical documentation after the Defendants had reportedly already closed their investigation. "Because

the emotional distress claim obviously piggybacks on the facts underlying the other claims, which are preempted, the emotional distress claim, too, is preempted." Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 7 n.9 (1st Cir. 1999). Count VI is therefore preempted by ERISA.

Finally, in Count VII, Willitts claims that the "Defendants ha[ve] been unjustly enriched by collecting years of monthly premiums under the policy but refus[ing] to provide coverage to the beneficiary insured Willets [sic], when he rightfully filed for his claims." [ECF No. 37 ¶ 56]. Because the determination of whether the Defendants were unjustly enriched will depend on an analysis of the ERISA benefits plan, Count VII is also preempted by ERISA. See, e.g., Joyce v. John Hancock Fin. Servs., Inc., 462 F. Supp. 2d 192, 211 (D. Mass. 2006) (granting summary judgment on a plaintiff's unjust enrichment claim because "the First Circuit has held that ERISA preempts all state-law claims—such as [the plaintiff's] claims for unjust enrichment and promissory estoppel—that affect an ERISA plan").

### B.     Willitts' ERISA Claim Under 29 U.S.C. § 1132

Therefore, for purposes of the pending summary judgment motions, all that remains is for the Court to consider Count III, which brings claims under 29 U.S.C. § 1132 based on Defendants' denial of Willitts' short-term disability without conducting an investigation. [ECF No. 37 ¶¶ 35–39].

#### 1.     LINA Is a Proper Party for the Short-Term Disability Claim

On summary judgment, LINA argues that it is an improper party for Willitts' claims related to his request for short-term disability because it only provides claims administration for Engie which self-funds the plan. [ECF No. 48 at 3]. Willitts does not address whether LINA is a proper party. See generally [ECF No. 55].

Generally, "the proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." Terry v. Bayer Corp., 145 F.3d 28, 36 (1st Cir.

1998) (quoting Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997)). As previously discussed, the short-term disability benefits plan provided that "[t]he Plan Administrator [LINA] is the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims.  The Plan Administrator shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact."  [ECF No. 36 at 386]. Further, the Claims Consulting Agreement explained that LINA would

> provide the initial and ongoing screening of claims to determine whether benefits are payable in accordance with the terms of the Plan.  Where required, and at Employer's [Engie's] expense, Consultant will seek and obtain information from medical providers and others necessary to determine qualification for benefits. Consultant will review the expected claim duration against duration guidelines used by the claim office at the time of the claim and determine the reasonable duration based on feedback from the claimant's attending physician, as appropriate. Consultant will advise Employer, with respect to each claim, as to whether, in Consultant's judgment, the claim is payable under the Plan.

[ECF No. 55 at 13].

LINA nonetheless argues that it is an improper party because the Claims Consulting Agreement also provided that Engie would be responsible for "the defense of any legal action or proceeding to recover benefits under the [short-term disability] plan, and any legal liability arising in connection with any such action or proceeding."  [Id. at 11].  Beyond the argument that the parties contracted around the general rule, LINA makes no argument as to why it is not a proper defendant given its role as the plan's administrator.  See [ECF No. 48 at 3–4].

The contractual provision that LINA references is included in a section captioned "Liability for Benefits, Expenses, and Taxes," [ECF No. 55 at 10], which states that "[e]xcept as otherwise expressly provided in th[e] [a]greement, all expenses and liabilities incident to the operation of the Plan shall be [Engie's] responsibility."  [ECF No. 55 at 11].  The provision then

14

specifically makes Engie liable for "any state or federal tax," "[a]ny costs or expenses incurred by Consultant" in investigating benefits claims, and "[t]he defense of any legal action . . . ." [Id. at 10–11].  In the view of the Court, the provision relied upon by LINA is best understood as referring merely to the costs of a legal defense and potential damages.  Though Engie may eventually have to indemnify LINA for its defense in this case, LINA is not excluded as an improper defendant and, in fact, as the administrator of the plan, is a proper party to this case.

### 2. The Decision Was Neither Arbitrary and Capricious Nor an Abuse of Discretion

In determining whether the Defendants abused their discretion in denying Willitts' request to extend his short-term disability benefits, the Court's review is deferential, but not a rubber stamp.  The First Circuit has explained:

> [T]here is a sharp distinction between deferential review and no review at all. Applying a deferential standard of review does not mean that the plan administrator will prevail on the merits.  In order to withstand scrutiny, the plan administrator's determinations must be reasoned and supported by substantial evidence.  In short, they must be reasonable.

Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs. Long Term Disability Plan, 705 F.3d 58, 62 (1st Cir. 2013) (internal quotation marks and citations omitted); see also McDonough v. Aetna Life Ins. Co., 783 F.3d 374, 379 (1st Cir. 2015) ("A court that undertakes abuse of discretion review in an ERISA case must determine whether the claims administrator's decision is arbitrary and capricious or, looked at from another angle, whether that decision is reasonable and supported by substantial evidence on the record as a whole.").  An ERISA action "ask[s] judges to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together."  See Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008).  "[A]ny one factor will act as a tiebreaker when the other

factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." Id.

Based on the record before it, the Court finds that the Defendants' decision to deny short-term disability benefits beyond September 29, 2016 was not arbitrary and capricious or an abuse of discretion. Willitts first argues that the Defendants failed to investigate his short-term disability claim. [ECF No. 37 ¶ 39].

Following the submission of Willitts' claim and before LINA had made its initial decision, Willitts' primary care physician found that he was not in "acute distress" in September or October 2016. [ECF No. 36 at 70–72]. More specifically, shortly before the end of Willitts' short-term disability coverage, his physician noted that he reported "feeling better" and that "his mood ha[d] improved tremendously" since he had been seeing a new counselor. [Id. at 74]. Throughout October and November, LINA continued to investigate the benefits claim and requested additional information from Willitts' primary care physician. See, e.g., [Id. at 84]. The physician reported that Willitts had not visited him since October. [Id. at 97]. In a November 2016 letter, his counselor reported that Willitts' "symptoms of anxiety and depression ha[d] diminished," but expressed some concern regarding a possible return to a "hostile work environment by a reasonable person's standards." [Id. at 117]. Thereafter, Willitts' counselor completed a brief questionnaire in February 2017, in which she noted that Willitts reported being "harassed at work" and was consequently unable to work because of "workplace hostility by a reasonable person standard." [Id. at 125].

After Willitts appealed LINA's decision in July 2017, LINA reviewed additional information from his treatment providers. [Id. at 190]. LINA also referred the appeal to a Behavioral Medicine Specialist for an independent review based on all the records previously

16

provided. [Id. at 199–201]. The Specialist made the independent determination that Willitts was not disabled. [Id.].

On September 20, 2017, LINA informed Willitts that its original coverage decision had been upheld on appeal. [Id. at 209–13]. It explained that the record lacked any "objective data or measured assessments to clarify [Willitts'] cognitive deficits or confirm the presence of an underlying, impairing, neurocognitive disorder." Though the record contained notes of Willitts' self-reported conditions, LINA found that "[c]linically observed and/or self-reported cognitive difficulties without positive findings of cognitive impairments from neuropsychological testing, neuroimaging studies, or other objective data, d[id] not support the requirement for medically necessary activity restrictions." [Id. at 211].

Against this investigational record, Willitts argues that, based on internal communications between the Defendants, the Defendants had actually closed his case on October 26, 2016, but falsely represented to Willitts that they would continue to monitor his claim. [ECF No. 55 at 4]. Willitts' argument is unsupported for at least two reasons. First, the relevant records provided by Willitts indicate that the Defendants decided not to hire an investigator to explore the possibility that Willitts was working as a plumber while his disability claim with the Defendants was pending, not that they had terminated their review of his claim. See [ECF No. 54 at 17–18 ("His side business is plumbing so I'd gather it's physical in nature . . . . We do have a Special Investigations Unit (SIU) that we can engage if necessary but there are fees associated with that. . . . [W]e can look into it but those concerns and possibly validate [sic] but they may or may not have an impact on the claim. . . . [T]hey will not fill the [SIU request] forms. Hence closing the task . . . .")]. These other plumbing jobs are also referenced in Willitts' counselor's notes. See [ECF No. 36 at 142 (including a note from

17

November 22, 2016, that "[h]e is doing small plumbing jobs. Following this provider's advice, he will try to work for himself.")]. Second, the administrative record, including the very document relied upon by Willitts for his argument that his file had been prematurely closed, makes clear that the Defendants did continue to investigate his claim after October 2016. See [ECF No. 54 at 19 ("11/30/2016 Received the records for requested date range and the provider mentioned that the patient visited the doctor only one time during the requested date range . . . .")]. Therefore, Willitts has failed to provide any evidence to support his claim that the Defendants abused their discretion by failing to investigate his request for short-term disability or that they misled him about the status of his claim.[3]

Willitts next argues that Defendants' denial of coverage was an abuse of discretion given the medical records before them. [ECF No. 37 ¶ 39]. The Defendants respond that their denial of coverage was reasonable given the lack of objective medical evidence to support Willitts' disability claim. [ECF No. 51 at 14].

As detailed in the denial of benefits letter relative to Willitts' appeal, "there [i]s no documentation of work tasks or activities that [Willitts was] actually unable to perform, or documentation of performance deficits at work." [ECF No. 36 at 211]. Rather, the records submitted by Willitts' counselor were based on self-reported symptoms, did not include any objective medical evidence to support Willitts' disability claim, and were wholly conclusory. "[A] plan administrator is not obligated to accept or even to give particular weight to the opinion

---

[3] The Court notes that the communication cited by Willitts includes representations from CIGNA. See [ECF No. 54 at 1315–26]. Willitts included the "Connecticut General Life Insurance Company (CG) and The Insurance Company of North America (INA) (CIGNA)" in his case caption. See [ECF No. 37 at 1]. Though LINA is a CIGNA company, CIGNA is not a party to this case and the entities shall be struck from the caption.

of a claimant's treating physician." Morales-Alejandro v. Med. Card. Sys., Inc., 486 F.3d 693, 700 (1st Cir. 2007).

A decision to deny benefits based on self-reported symptoms is insufficient to render the Defendants' denial of coverage an abuse of discretion. See, e.g., Sorensen v. Met. Life. Ins. Co., No. 07-cv-11278, 2009 WL 901864, at *7 (D. Mass. Mar. 31, 2009) (finding that medical records were insufficient to establish a disability when treatment providers' findings were based on plaintiff's self-reported symptoms, rather than objective evidence such as a diagnostic assessment). Therefore, Willitts has failed to demonstrate that the Defendants abused their discretion in refusing to extend his short-term disability benefits beyond September 29, 2016.

## IV.   CONCLUSION

Accordingly, for the reasons stated herein, Defendants' motions for partial summary judgment, [ECF Nos. 47, 49], are GRANTED. Specifically, summary judgment is granted as to Counts I, II, IV, V, VI, and VII because the state-law claims are preempted by ERISA and as to Count III because Willitts has failed to prove that the Defendants abused their discretion in declining to extend his short-term disability benefits beyond September 2016. Defendants shall, within twenty-one days, either file an answer to the amended complaint or move to dismiss Counts VIII and IX of the amended complaint.

SO ORDERED.

June 1, 2020                                         /s/ Allison D. Burroughs
                                                     ALLISON D. BURROUGHS
                                                     U.S. DISTRICT JUDGE