UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES A. WILLITTS, SR., | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *  Civil Action No. 18-cv-11908-ADB |
| LIFE INSURANCE COMPANY OF NORTH AMERICA and GDF SUEZ ENERGY NORTH AMERICA INC./ENGIE NORTH AMERICA, INC., | * |
| | * |
| Defendants. | * |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

BURROUGHS, D.J.

Plaintiff James A. Willitts, Sr., who is now proceeding *pro se*,[1] brings this action against his former employer GDF Suez Energy North America Inc./Engie North America Inc. ("Engie") and the employee disability insurance company, Life Insurance Company of North America ("LINA" and, with Engie, "Defendants"), claiming that Defendants failed to honor terms of his insurance benefits policy contract and that Engie wrongfully terminated him. [ECF No. 37 ("Am. Compl.")].

---

[1] Willitts had counsel when he filed his amended complaint, but his attorney withdrew before Willitts filed his opposition to Defendants' motions to dismiss. See [ECF No. 32 (May 8, 2019 Notice of Appearance); ECF No. 37 (Sept. 12, 2019 filing of amended complaint); ECF No. 70 (July 7, 2020 Order granting motion to withdraw); ECF No. 72 (Aug. 19, 2020 opposition to motions to dismiss)].

Currently before the Court are Defendants' motions to dismiss, [ECF Nos. 64 (LINA), 66 (Engie)], and Willitts' motion for clarification, [ECF No. 74].[2] For the reasons set forth below, Defendants' motions are <u>GRANTED</u> and Willitts' motion is <u>DENIED</u> as moot.[3]

**I.   BACKGROUND**

For purposes of this Order, the Court draws the relevant facts from Willitts' operative complaint, [Am. Compl.], and the documents attached thereto, <u>Lydon v. Local 103, Int'l Brotherhood of Elec. Workers</u>, 770 F.3d 48, 53 (1st Cir. 2014), and views them in the light most favorable to him, <u>Ruivo v. Wells Fargo Bank, N.A.</u>, 766 F.3d 87, 90 (1st Cir. 2014).

Willitts began working for Engie in April 2014. [Am. Compl. ¶ 7]. As part of his employment, he contracted to participate in the group disability benefits insurance plan, which is insured by LINA and administered by CIGNA.[4] [Id. ¶¶ 8, 10]. On September 12, 2016, Willitts filed a short-term disability claim. [Id. ¶ 15]. Around the same time, he took a leave from work, pursuant to the Family Medical Leave Act ("FMLA"), which permits employees to take up to twelve weeks of leave under certain circumstances. See [ECF No. 39 at 15 (doctor's letter regarding FMLA leave)]. In a letter dated October 28, 2016, CIGNA informed Willitts that his short-term disability benefits had been approved only for the period September 16, 2016 through September 29, 2016. [Am. Compl. ¶ 16; ECF No. 38 at 55]. CIGNA's letter stated that CIGNA would "continue to monitor [Willitts'] condition, and periodically, [would] request updated information to confirm [his] restrictions and limitations." [ECF No. 38 at 55]. CIGNA informed

---

[2] Through his motion for clarification, Willitts seeks additional information regarding the fact that LINA was acquired by another insurance company. See [ECF No. 74].

[3] Given that LINA is being dismissed from the case, its relationship with the company that acquired it and that company's potential vicarious liability are irrelevant.

[4] CIGNA is not a party to this case.

Willitts that his claim would remain open through November 11, 2016, invited him to send additional medical paperwork if his disability extended beyond September 30, 2016 so that CIGNA could consider providing additional benefits, and noted that if he did not send additional paperwork, CIGNA would "assume [his] disability period has ended." [Id.]. Willitts followed up on his claims for two years but never received benefits beyond those he received for the fourteen-day period beginning September 16, 2016.[5] [Am. Compl. ¶ 20]. Engie terminated Willitts on or about December 6, 2016. [Id. ¶¶ 22, 60]. Willitts alleges that Engie's "termination of Willets [sic] employment was based on the fact that his physician cannot furnish 'return to work/fitness for duty.'" [Id. ¶ 22].

On June 1, 2020, the Court dismissed six of the eight counts in Willitts' operative complaint, finding that five of Willitts' state law claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") and that Willitts' ERSIA claim failed because Willitts had not shown that Defendants abused their discretion in declining to extend his short-term disability benefits beyond September 29, 2016. [ECF No. 63 at 19]. The remaining claims are: (1) a claim under Massachusetts General Laws Chapter 93A against both Engie and LINA for unfair or deceptive practices (Count VIII); and (2) a claim for wrongful termination/retaliation against Engie (Count IX). [Am. Compl. ¶¶ 57–66]. Willitts alleges that Defendants violated Chapter 93A by, among other things, acting unfairly and deceptively and violating other laws designed to protect the public's health and safety, which resulted in injuries including his wrongful termination, violations of ERISA, and significant physical and emotional distress. [Id. ¶ 58]. With respect to his wrongful termination/retaliation claim, Willitts alleges

---

[5] The amended complaint does not make clear whether, as part of the "follow ups," Willitts submitted the additional medical paperwork referenced in CIGNA's letter. See [Am. Compl. ¶¶ 18–20].

that Engie terminated him in December 2016 because he filed a short-term disability claim in September 2016. [Id. ¶¶ 59–66]. He also seems to allege that he was terminated because one of his medical providers had recommended to Engie, in September 2016, that Willitts exercise his rights under the FMLA. [Id. ¶ 61].

## II. LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible . . . ." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility

4

standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

### III. DISCUSSION

#### A. Chapter 93A

##### 1. Engie

Among other arguments, Engie maintains that Willitts cannot bring a Chapter 93A claim against Engie because plaintiffs cannot sue their employers under Chapter 93A as a matter of law. [ECF No. 67 at 3–4]. Willitts does not address this argument. See [ECF No. 72].

It is well-settled that employees cannot bring Chapter 93A claims against their employers. See Manning v. Zuckerman, 444 N.E.2d 1262, 1266 (Mass. 1983) ("Disputes arising out of the employment relationship between an employer and an employee are not cognizable under c. 93A."); Debnam v. FedEx Home Delivery, 766 F.3d 93, 96–97 (1st Cir. 2014) ("[A]n employee cannot bring a suit against his or her employer under Chapter 93A."); Allstate Ins. Co. v. Fougere, 450 F. Supp. 3d 10, 17 (D. Mass. 2020) ("93A does not apply to . . . a suit by an employee against his or her employer."); Driscoll v. Simsbury Assocs., Inc., No. 17-cv-12373, 2018 WL 2139223, at *7 (D. Mass. May 9, 2018) ("[T]he claim must be dismissed because it is based exclusively upon [p]laintiff's employment relationship with [d]efendant, and therefore she is not entitled to invoke the protections of the Chapter 93A."). Here, Willitts specifically alleges that he was an Engie employee, [Am. Compl. ¶ 1], and, although the factual basis for his Chapter

5

93A claim against Engie is not entirely clear, the claim is premised on Willitts' employment relationship, see [id. at 1 ("Defendants failed to honor the terms of the Plaintiff's insurance benefits policy contract as part of his underlying employment contract and Plaintiff was wrongfully terminated for exercising his rights to enforce material terms of the policy contract"); id. ¶ 22 ("Engie terminated Willets [sic] within 90 days after Willets' [sic] filing for STD and LTD claims.")]. Accordingly, because Willitts was employed by Engie, his Chapter 93A claim against Engie fails as a matter of law, and Engie's motion to dismiss Count VIII, [ECF No. 66], is GRANTED.

    2.  LINA

LINA adopts Engie's alternative argument that Willitts' Chapter 93A claim is preempted by ERISA. [ECF No. 67 at 4–6 (Engie's preemption argument); ECF No. 65 at 3 (LINA's adoption of Engie's argument)]. Willitts does not meaningfully address preemption. See [ECF No. 72 at 11 ("Both Defendants violating [Chapter 93A] . . . and claiming protection behind (ERISA.) ERISA is not a shield of protection from the State.")].

"ERISA will be found to preempt state-law claims," including Chapter 93A claims, "if the trier of fact necessarily would be required to consult the ERISA plan to resolve the plaintiff's claims." Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 281 (1st Cir. 2000). The amended complaint makes three specific factual allegations that could support a Chapter 93A claim against LINA: (1) that LINA did not conduct a special investigation into Willitts' claim, (2) that LINA "falsely represented" to Willitts that it would continue to monitor his claim, and (3) that LINA denied Willitts' follow-up requests regarding his claim for two years. [Am. Compl. ¶¶ 17, 19, 20]. To determine whether LINA's alleged conduct was violative of Chapter 93A, which proscribes unfair or deceptive conduct, a factfinder would have to consider the

ERISA plan to determine Willitts' rights, and LINA's obligations, regarding a special investigation, the continued monitoring of his claim, and responses to follow-up requests. Willitts' basic contention is that LINA acted unfairly or deceptively in the course of denying his benefits. In fact, Willitts premises his Chapter 93A claim, in part, on a "violation of ERISA." [Id. ¶ 58d.].

In similar situations, courts have found Chapter 93A claims to be preempted. See Hotz v. Blue Cross and Blue Shield of Mass., Inc., 292 F.3d 57, 60–61 (1st Cir. 2002) (affirming trial court's finding that Chapter 93A claim was preempted where plaintiff challenged insurance company's decision to wait three months to approve payment for certain medical procedures); Pingiaro v. Standard Ins. Co., 986 F. Supp. 2d 96, 102 (D. Mass. 2013) (finding Chapter 93A claim preempted where plaintiff alleged that defendant's "decisions in administering [the] employee benefit plan with respect to [plaintiff] violated [Chapter 93A]"); Mayo v. Liberty Mut. Ins. Co., No. 06-cv-11435, 2007 WL 9797837, at *2–3 (D. Mass. Aug. 15, 2007) (finding Chapter 93A claim preempted where plaintiff felt "wronged by the way the [p]lan has treated her" and where "no state cause of action would exist if an employee benefit plan did not exist"); Tuohig v. Principal Ins. Grp., 134 F. Supp. 2d 148, 155 (D. Mass. 2001) (finding Chapter 93A claim preempted where claim was based on defendant's allege failure to pay benefits due under the policy and to act in good faith in negotiating resolution of a coverage dispute); Spalding v. Reliance Standard Life Ins. Co., 835 F. Supp. 23, 30 (D. Mass. 1993) (finding Chapter 93A claim preempted where the alleged misrepresentation underlying plaintiff's claim involved nonpayment of benefits); contra Feeney Bros. Excavation LLC v. Morgan Stanley & Co. LLC, No. 18-cv-12313, 2020 WL 2527851, at *7 (D. Mass. May 18, 2020) (finding no preemption where conduct that plaintiffs alleged was unfair or deceptive was "outside the scope of

[defendants'] ERISA role" and therefore claims were not "alternative enforcement mechanisms to the ERISA statutory scheme masquerading as state law claims"); Miara v. First Allmerica Fin. Life Ins. Co., 379 F. Supp. 2d 20, 64 (D. Mass. 2005) (finding no preemption where plaintiff's claims were unrelated to the denial of benefits under a plan). The Court reaches the same conclusion here.

Accordingly, Willitts' Chapter 93A claim is preempted by ERISA and LINA's motion to dismiss Count VIII, [ECF No. 64], is therefore GRANTED.

B.   **Wrongful Termination/Retaliation Claim**

In the amended complaint, Willitts makes the following allegations regarding his wrongful termination/retaliation claim:

> Soon after Willets' [sic] initial filing of his STD claims around September, 2016, ENGIE induced Willets [sic] to produce a contradictory letter for Willets [sic] to return in December 2016. Willets [sic] physician was unable to produce such letter because the physician had already informed ENGIE that Willets [sic] cannot return to work until January 2017. ENGIE terminated Willets [sic] on or about December 6, 2016.
>
> A medical provider further recommended to ENGIE that Plaintiff exercise FMLA rights on September 12, 2016. Within three months of the provider's letter, Willets [sic] was terminated.
>
> ENGIE subsequently asked Plaintiff to sign a "Confidential Release and Waiver of Claims Agreement", which Plaintiff never signed.
>
> Plaintiff in good faith engaged in protected conduct in September of 2016.
>
> ENGIE retaliated against Plaintiff by terminating him.
>
> The temporal proximity of Plaintiffs' [sic] exercise of his conduct and termination [is] sufficient to establish the causation element of retaliation for his wrongful termination.
>
> Plaintiff was ultimately terminated and suffered financial and emotional harm.

[Am. Compl. ¶¶ 60–66 (citations omitted)]. Additionally, in his opposition to Defendants' motions to dismiss, he advances a theory entirely absent from his amended complaint: that he

was retaliated against for exposing Engie's Occupational Safety and Health Act ("OSHA") violations.  [ECF No. 72 at 13–19].

First, with respect to Willitts' OSHA-related allegations, an opposition to a motion to dismiss is not the place for new factual allegations.  Decoulos v. Town of Aquinnah, No. 17-cv-11532, 2018 WL 3553351, at *12 (D. Mass. July 24, 2018) ("[Plaintiff] cannot bolster the allegations of the Amended Complaint through the late addition of new facts in opposing a motion to dismiss."); Klein v. MHM Correctional Servs., Inc., No. 08-cv-11814, 2010 WL 3245291, at *2 (D. Mass. Aug. 16, 2010) ("For the purposes of deciding whether a plaintiff's factual allegations are sufficient in the context of a motion to dismiss under Rule 12(b)(6), the court may not look beyond the complaint to facts alleged solely in a plaintiff's moving papers."); see Gordo-Gonzales v. United States, No. 15-cv-01602, 2016 WL 10672229, at *2 (D.P.R. July 22, 2016) ("Using motion pleading to include new facts and law is an improper way to supplement or amend a Complaint.").  This is generally true even if the plaintiff is proceeding *pro se*.[6]  See Miller v. Suffolk Cty. House of Correction, No. 01-cv-11331, 2002 WL 31194866, at *2 n.1 (D. Mass. Sept. 27, 2002) (declining to consider allegations which appeared for first time in *pro se* plaintiff's opposition to motion to dismiss).  Accordingly, the Court will not consider Willitts' OSHA-related allegations in deciding Engie's motion to dismiss.

With respect to the factual allegations actually contained in the amended complaint, Willitts' basic allegation seems to be that two events in September 2016—Willitts filing a short-term disability claim and his medical provider sending a letter to Engie suggesting that Willitts exercise his FMLA rights—precipitated Willitts' termination in December 2016.  [Am.

---

[6] Willitts did have counsel when he filed his amended complaint, see [Am. Compl. at 12 (signed by counsel)], but did not when he opposed Defendants' motions, see [ECF No. 72 at 20 (signed by Willitts)].

Compl. ¶¶ 60, 61, 63–65]. Willitts does not explicitly state whether he is asserting a claim for retaliation under the FMLA, ERISA, or both. See [id. ¶¶ 59–66].

1. FMLA

Under the FMLA, an eligible employee is entitled to twelve weeks of leave during any twelve-month period if, among other reasons, he has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "Following a qualified absence, the employee is entitled to return to the same position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority." Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159 (1st Cir. 1998)). "In addition to creating the above entitlements, the FMLA provides protection in the event an employee is discriminated against for exercising those rights." Id.

> To establish a *prima facie* case of FMLA retaliation, a plaintiff must demonstrate that 1) she availed herself of a protected right under the FMLA; 2) she was adversely affected by a decision of her employer; and 3) there is a causal connection between her protected activity and the adverse action of her employer.

Haglund v. Estee Lauder Cos., 466 F. Supp. 3d 292, 297 (D. Mass. 2020) (citing Hodgens, 144 F.3d at 161). To survive Engie's motion to dismiss, Willitts need not establish a *prima facie* case or allege every fact necessary to ultimately prevail at trial, but the *prima facie* elements guide the Court's plausibility determination. See Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 718 (1st Cir. 2014).

Here, Willitts has not stated a plausible FMLA retaliation claim. Apart from a single reference to the FMLA in Count IX (i.e., that Willitts' doctor recommended to Engie that Willitts exercise his FMLA rights), the amended complaint is devoid of FMLA-specific factual

allegations.  See [Am. Compl.].[7]  Notably, Willitts fails to allege that he exercised any right under the FMLA (i.e., actually took FMLA leave), though documents incorporated by reference into the amended complaint suggest as much.  Even setting aside that deficiency, Willitts' allegations do not suggest a causal connection between his FMLA leave and his termination.  He seemingly concedes that the sole basis for inferring a causal relationship is temporal proximity. [Id. ¶ 65].  "But while temporal proximity is one factor from which an employer's bad motive can be inferred, by itself, it is not enough—especially if the surrounding circumstances undermine any claim of causation."  Carrero-Ojeda, 755 F.3d at 720 (citing Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003)).

Even if temporal proximity, alone, were sufficient, the chronology alleged here—that he began to take leave in September and was terminated in December, after he had already been on leave for a significant period of time—raises no inference of retaliatory motive.  See Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 337–38 (1st Cir. 2005) (finding no "inference of retaliatory motive" where plaintiff "began to take leave in October 2001 and was not terminated until almost four months later, after he had taken more than twenty-five days of leave").  Further, Willitts specifically alleges that he was fired because he would not be able to work until January 2017, weeks after his twelve-week FMLA leave would end.  [Am. Compl.

---

[7] This is Willitts' second bite at the apple.  In a companion case, Willitts filed a complaint with more detailed allegations regarding his FMLA retaliation theory, see Complaint at 5–7, Willitts v. Engie North America Inc., No. 18-cv-12252 (D. Mass. Oct. 26, 2018), ECF No. 1, which the Court subsequently dismissed with leave to amend, see Order on Motion to Dismiss, Willitts v. Engie North America Inc., No. 18-cv-12252 (D. Mass. May 13, 2019), ECF No. 22.  Those FMLA-specific allegations do not appear in the amended complaint in this case.  Rather, the amended complaint contains only the single FMLA-related allegation discussed above.  See [Am. Compl. ¶ 61].  Accordingly, it is possible that Willitts intended to drop his FMLA claim altogether.  Nonetheless, the Court will give Willitts the benefit of the doubt, assume that he meant to advance the claim, and briefly address the merits of such a claim.

¶¶ 22, 60]. The letters incorporated by reference into the amended complaint support this alternative rationale for his termination, rather than evidencing any retaliatory motive. See [ECF No. 39 at 15 (Sept. 12, 2016 letter suggesting that Willitts take FMLA leave); id. at 16 (Nov. 23, 2016 letter recommending that Willitts' FMLA leave continue until Jan. 1, 2017); id. at 14 (Dec. 1, 2016 email informing Willitts that "if [he was] unable to furnish the physician's return to work/fitness for duty by [Dec. 6, 2016], [Engie] w[ould] terminate [his] employment")].

Based on the foregoing, the only plausible inference that can be drawn from the factual allegations in the amended complaint, and the documents attached thereto, is that Engie fired Willitts because he was medically unable to return to work after his twelve-week FMLA leave expired. Engie was not required to continue to employ Willitts beyond his FMLA leave. See Bellone v. Southwick-Tolland Reg'l Sch. Dist., 748 F.3d 418, 424 (1st Cir. 2014) ("[A]n employee is not entitled to reinstatement under the FMLA if he is unable to return to work until after the expiration of his leave."); Robson v. Shaws Supermarkets Inc., 411 F. Supp. 3d 58, 69 (D. Me. 2019) ("[A]n employer acts within his rights if it terminates an employee who fails to return to work upon expiration of FMLA leave."). Accordingly, Willitts has failed to state a claim for FMLA retaliation.

    2.    ERISA

Section 510 of ERISA provides that:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140. "'In enacting section 510, Congress' primary aim was to prevent unscrupulous employers from discharging or harassing their employers [sic] in order to keep

12

them from obtaining vested pension rights or other benefits.'" Barthelmes v. Kimberly-Clark Corp., No. 13-cv-30164, 2015 WL 1431156, at *15 (D. Mass. Mar. 27, 2015) (quoting Lindemann v. Mobil Oil Corp., 141 F.3d 290, 295 (7th Cir. 1998)). "In order to establish the prima facie case under Section 510, a plaintiff must show that he (1) is entitled to ERISA's protection, (2) was qualified for the position, and (3) was discharged under circumstances that give rise to an inference of discrimination." Rodrigues v. EG Sys., Inc., 639 F. Supp. 2d 131, 134 (D. Mass. 2009) (citing Barbour v. Dynamics Rsch. Corp., 63 F.3d 32, 38 (1st Cir. 1995)).

Willitts' allegations fall short of stating a plausible ERISA retaliation claim.[8] Willitts seems to base his claim solely on temporal proximity, meaning the time between when he filed his short-term disability claim on or about September 12, 2016 and his termination on or about December 6, 2016. [Am. Comp. ¶¶ 15, 60, 65]. He does not, however, allege any relationship between the filing and the termination beyond the timing. "'[W]hile the timing of a discharge may in certain situations create the inference of reprisal [under ERISA],' any such inference must be reasonable in light of the evidence." Vazquez Segarra v. P.R. Tele. Co., No. 05-cv-02347, 2008 WL 1745869, at *5–6 (D.P.R. Apr. 11, 2008) (second alteration in original) (citations omitted) (quoting Kimbro v. Atl. Richfield Co., 889 F.2d 869, 881 (9th Cir. 1989)). Here, in light of Willitts' other allegations, the inference of reprisal is not reasonable. This is

---

[8] To the extent Willitts' amended complaint can be read to allege that Engie fired him to prevent him from obtaining benefits to which he was entitled or would soon become entitled, that allegation fails. By the time Willitts was terminated in December 2016, he was not receiving any ERISA benefits because his short-term disability benefits had not been extended beyond September 29, 2016. [Am. Compl. ¶ 18]. Further, there is no indication in the amended complaint, or the documents attached thereto, that Engie believed that Willitts was entitled to, or would become entitled to, any additional benefits. Accordingly, there is nothing in the record before the Court to suggest that Engie was aiming to prevent Willitts from obtaining current or future benefits. See Barthelmes, 2015 WL 1431156, at *15. Thus, the Court understands Willitts to be advancing the claim that Engie fired him in retaliation for seeking ERISA benefits (i.e., filing a short-term disability claim) in the first place.

particularly true where Willitts himself affirmatively alleges and therefore recognizes that Engie fired him because he could not return to work until January 2017, [Am. Compl. ¶¶ 22, 60; ECF No. 39 at 14], and the documents that he attaches to his amended complaint confirm that he was fired for being medically unable to return to work once his FMLA leave expired.  Further, as even Willitts admits, he was not qualified for the position at the time of his termination, which is a requirement for a viable ERISA claim, because he had not been medically cleared to work when he was terminated.  See Rodrigues, 639 F. Supp. 2d at 134 (noting that being qualified for the position is an element of an ERISA retaliation claim); Iwata v. Intel Corp., 349 F. Supp. 2d 135, 143 (D. Mass. 2004) (granting motion to dismiss ERISA retaliation claim where plaintiff admitted that she was unable to return to work).  Under these circumstances, Willitts has failed to state a plausible ERISA retaliation claim.  Contra Altschuler v. Animal Hosps., Ltd., 901 F. Supp. 2d 269, 276 (D. Mass. 2012) (denying defendant's motion for summary judgment where plaintiff's termination letter stated that she was terminated "for complaining about the untimely [] IRA deposits"); Gretsky v. Edelstein & Co. LLP, No. 10-cv-11122, 2011 WL 666203, at *2 (D. Mass. Feb. 14, 2011) (denying motion to dismiss where plaintiff alleged that supervisor informed her that her poor performance review was based on the fact that she had filed a complaint with the Employee Benefits Security Administration).

Therefore, because Willitts' wrongful termination/retaliation claim against Engie fails, Engie's motion to dismiss Count IX, [ECF No. 66], is GRANTED.

## IV.    CONCLUSION

Accordingly, for the reasons stated above, Defendants' motions to dismiss Willitts' only remaining claims, [ECF Nos. 64, 66], are GRANTED and Willitts' motion for clarification, [ECF No. 74], is DENIED as moot.

**SO ORDERED.**

February 25, 2021                                                                 /s/ Allison D. Burroughs
                                                                                          ALLISON D. BURROUGHS
                                                                                          U.S. DISTRICT JUDGE